Gadsden v. Johnson.

JAMES GADSDEN, APPELLEE, V. J. S. JOHNSON ET AL., APPEL-
LANTS.

FILED JULY 1, 1902.   No. 11,888.

Commissioner's opinion, Department No. 3.

1. **Release of Mortgage.** A formal release of a mortgage executed
   by the mortgagee extinguishes the lien of the mortgage,
   whether the same is fully paid or not. If the release is made
   through inadvertence or mistake, the lien of the mortgage may
   be reinstated by proper proceedings taken therefor.

2. **Evidence.** Evidence examined, and *held* to support the decree of
   the district court.

APPEAL from the district court for Colfax county.
Heard below before HOLLENBECK, J.   *Affirmed.*

*Charles J. Phelps* and *Rich & Clapp*, for appellants.

*Frank Dolezal* and *George H. Thomas*, contra.

DUFFIE, C.

The plaintiff and appellee brought this action to quiet
his title to the south 88 feet of lot 16 in block 80 in the city
of Schuyler, he claiming title thereto by quitclaim deed
made to him by Abraham Code and wife, of date November
26, 1894. A history of the title to the lot, so far as neces-
sary to be understood, is the following: Abraham Code
and one Innes were partners in the mercantile business
in Schuyler for some time prior to April, 1892, and owned
this property, the business being conducted in a store
building located thereon. In April, 1892, they made an
assignment for the benefit of their creditors, and in due
course Andrew F. Ross was elected assignee of the estate,
and the lot in question was conveyed to him by the sheriff
of the county. Thereafter and on October 5, 1892, the as-
signee, Ross, pursuant to an order of the district court of
Colfax county, conveyed the lot to the defendant Johnson,
the consideration, as claimed by the plaintiff, being fur-

nished by Code, one of the partners, Johnson taking the title as trustee for him. Some time in May, 1893, Code bought from the creditors of Code & Innes the stock of goods and other assets of the insolvent partnership at sixty-five per cent. of the appraised value thereof; the money for that purpose being furnished partly by the Schuyler National Bank, of which Johnson, one of the defendants, was cashier, and partly by individual friends of Code; the agreement under which the money was furnished being that a bill of sale of the stock and bills receivable should be made to Johnson, in whose name the business should be conducted, and to whom all proceeds of the sales should be paid; he to use the same in repaying the borrowed money. At this time the defendant Summers held two mortgages on the store lot,—one for $1,000, of date July 18, 1891, the other for $2,500, of date September 16, 1891. Summers was president of the Schuyler National Bank, and in relation to the $2,500 mortgage, above mentioned, it is claimed by appellee, and not disputed, that the copartnership of Code & Innes at the time of executing this mortgage, had an agreement with the bank by which it was to advance to them money as needed, not to exceed $2,500, and that the mortgage above mentioned, and the note secured thereby, were made to Summers, the president, as collateral security for the amount which might be so advanced. At the time of the assignment the sum of $2,460 had been advanced by the bank, and the $2,500 mortgage stood as security therefor. Some time after the lot had been conveyed to Johnson by the assignee, Code & Innes, their wives joining with them, each executed a quitclaim deed to Johnson of the lot in controversy. Johnson claims that these deeds were made for the purpose of vesting in him the full equitable. as well as the legal, title, and that the consideration therefor was the discharge of Code & Innes from liability for the payment of the debts these mortgages were made to secure, while Code and the appellee claim that one Hughs was negotiating for a purchase of the lot, was dissatisfied with

the title held by Johnson, and demanded that he secure quitclaims from Code & Innes, and that these deeds were made for the purpose of vesting in Johnson any interest they might have in the lot which did not pass to Johnson by the deed of their assignee, and that the sole purpose in making them was to satisfy a prospective purchaser, and allow Johnson to make a sale for the benefit of Code. The district court evidently took this view of the case, which we think is sufficiently supported by the evidence.

On the 29th of March, 1893, and about the time that Hughs was negotiating for the lot, Summers filed a release of the mortgage for $2,500, which was duly recorded, and on May 6, 1893, the officers of the bank procured the county clerk to erase from this mortgage the date and book and page of its former record, and to again record the same in Book V. at page 289, the first record thereof being made in Book V. at page 74. The appellants insist that the mortgage, or the debt for which it stood as collateral, was never paid in full, and that the release was filed to allow Johnson to consummate a sale of the lot to Hughs divested of liens, and that when the trade with him fell through, the mortgage was refiled, in the belief that by this means it would still stand as security for what they still claimed remained unpaid upon the mortgage debt. In their cross-bill, filed for the purpose of securing a foreclosure of this mortgage, no claim is made that this release was filed through inadvertence or mistake, nor is it asked that the same shall be reinstated as a lien against the mortgaged premises for any amount found due thereon, and in this state of the case, the district court was undoubtedly right in holding that it could not be regarded as a lien on the premises, even though the contention of the appellee that the mortgage had been fully paid, and the release executed because of such payment, was not plainly shown. The instrument was more than an acknowledgment of the payment of the mortgage debt. It expressly released the mortgage, the mortgagee's interest in the land. *Gadsden v. Latey,* 42 Nebr., 128.

36

The defendants, in their cross-bill, also asked that the mortgage for $1,000 be foreclosed, and the plaintiff, in his answer to the cross-bill, alleged that the same had been paid and should be released. The court, by its decree, found that the rents and profits arising from the premises since the defendants had possession thereof belonged to the plaintiff, and that after crediting the same on the mortgage there remained due thereon the sum of $304.57, which was made a first lien on the lot. The defendants complain of this finding as against the evidence. A review of the evidence would accomplish no useful purpose, and would unduly extend this opinion. It will suffice to say that the sum of $1,000 withheld by Johnson upon the claim that Code had promised him a bonus in that amount for assisting to raise the money to purchase the assets of the insolvent copartnership from the assignee, might, under the evidence, very properly be applied on one or the other of these mortgages, and a further sum of from $2,000 to $2,200, growing out of the sale of some Omaha property held by Johnson, as he claims, in his own right, but which Code asserts was held in trust for his benefit, might also, without violence to the testimony, be applied as a payment by Code to the bank.

We are satisfied that the decree of the district court is right, and recommend that it be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.