VIVIEN I. MAYFIELD ET AL., APPELLEES, V. DWELLING HOUSE
MUTUAL INSURANCE COMPANY, APPELLANT:
BELLE MARION, APPELLEE.

FILED MAY 15, 1931. No. 27678.

*George E. Hager* and *Wiltse & Wiltse,* for appellant.

*John C. Mullen, F. A. Hebenstreit* and *Jean B. Cain,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This action was begun in the district court for Richardson county by Vivien I. Mayfield and George Goldsmith, plaintiffs, against the Dwelling House Mutual Insurance Company, hereinafter called the company, to recover $4,000 for the total loss by fire of a certain business property known as the Richardson County Hatchery, which was owned by plaintiffs and insured under two fire insurance policies issued by the company.

For some years before June 20, 1929, Mrs. Belle Marion was the owner of the insured property, but on that date she sold the property to plaintiffs, for which they executed their promissory note for $2,500, payable to Mrs. Marion, and secured by a first mortgage on the premises. When the plaintiffs bought the property Mrs. Marion assigned both insurance policies to them and the assignments were regularly approved by the insurance company. A mort-

gage clause was inserted in the policies to protect Mrs. Marion's interest as mortgagee.

On or about November 15, 1929, the plaintiffs negotiated for the sale of the property to Bennett E. Cook. Mrs. Marion testified that she executed a release of her mortgage against plaintiffs and accepted a mortgage from Cook under a representation that the insurance policies would be assigned to him with a mortgage clause inserted therein for her protection. But she now contends that plaintiffs did not sell the property to Cook nor was the insurance transferred to him.

The company admitted that the assignment of the policies from Mrs. Marion to plaintiffs was made with the consent of the company. But the company contends that neither Mrs. Marion nor the plaintiffs have any beneficial interest in the policies from the fact that the plaintiffs conveyed the title to the property to Cook. The company also argues that the mortgage held by Mrs. Marion against the plaintiffs was satisfied by the payment of $300 in cash to her by plaintiffs and also by the execution of a mortgage from Cook to her for the unpaid remainder of the $2,500 mortgage.

The court found that the plaintiffs Mayfield and Goldsmith are now and on the date of the fire were the owners of the property in suit and that the deed executed by them to Cook is a void instrument. The court also found that $4,097.21 is due the plaintiffs from the insurance company under the provisions of the insurance policies. In respect of the money owing by the plaintiffs to Mrs. Marion the court found that $2,157.16 was due her pursuant to the terms of the mortgage executed by the plaintiffs, and that this amount should be deducted from the sum to be paid to the plaintiffs by the insurance company. The court further ordered that Mrs. Marion's mortgage be reinstated and that the release executed by her, in favor of plaintiffs, at the time of the transactions between plaintiffs and Cook, be annulled and held for naught. The insurance company has appealed.

In whom was the title to the insured property vested before and at the time it was destroyed by fire and to whom should the insurance, if any, be paid is the question before us. That the title to the property was and now is in the defendant Cook is the argument of the insurance company. But Cook makes no claim to the property whatever nor does he claim any insurance. He contends that no title to the property passed to him. The plaintiffs contend that the property belonged to them from the fact that the sale of the property to Cook had not yet been consummated at the time of the fire. And Mrs. Marion also contends that plaintiffs owned the property and that she is therefore entitled to recover from them the amount due on her mortgage.

During the time in question here the plaintiffs were engaged in business in Falls City and, in respect of Cook's interest in the transaction, Mayfield testified that Cook refused to accept the deed until certain incumbrances outstanding against the property were paid. And Goldsmith testified that it was understood at the time that Mrs. Marion's interest should be protected in the transfer of the property by the insertion of a mortgage clause in her favor in the insurance policies.

The company's agent, Mr. Lichty, testified that the transfer of the policies to plaintiffs by Mrs. Marion was approved by the company at the time the property was sold to them and that the premiums thereon had then been paid. From Lichty's evidence it appears that, some time before the fire, he was informed by the plaintiffs that they contemplated selling the property to Cook and that he, Lichty, then urged that the insurance should be transferred to Cook. He testified that he did not then know that the details of the transaction had not been closed.

Cook testified that he received a deed from the plaintiffs by mail, but that he returned it to them and informed plaintiffs that he refused to accept the deed until certain bills outstanding against the business had been paid. Cook

also testified that he signed a mortgage in favor of Mrs. Marion, but that he did not authorize the filing of the mortgage and that he instructed the plaintiffs to hold it until they had paid certain debts against the property.

It is elementary that, to effect a sale and conveyance of a valid title to real estate, there must be a delivery of a deed of conveyance to the purchaser, and an understanding between the parties thereto that the title to the property would thereby pass. No particular act or form of words is necessary to constitute such delivery, and delivery may be presumed from the facts and circumstances of each particular case, provided an intention to deliver is shown. *Brown v. Westerfield,* 47 Neb. 399; *Flannery v. Flannery,* 99 Neb. 557; *Brooks v. Brooks,* 105 Neb. 235. But a recognized authority has said: "An estate cannot be thrust upon a person against his will. * * * The rule as to the necessity of acceptance is sometimes declared in the terms of a definition of a complete delivery, as that delivery must be the concurrent act of two parties; which, of course, is tantamount to saying that the deed must be accepted." 8 R. C. L. 975, sec. 46. Clearly the title to the property herein did not pass to Cook, from the fact that the deed was not accepted by him but was immediately returned to the plaintiffs. Where a deed is delivered to a prospective purchaser of real estate by the owners thereof without the performance by such owners of certain conditions required as a precedent to its acceptance by the purchaser, and the deed is immediately returned to the owners unaccepted, the title to such property does not pass to the purchaser.

We think that the $300 paid to Mrs. Marion by plaintiffs at the time of the alleged sale of the property to Cook was due on the note under the terms thereof, and that the money she received from Cook was likewise due as a payment on the original note, and that Mrs. Marion therefore received no consideration for releasing her mortgage against plaintiffs. Where real estate is sold sub-

ject to an existing mortgage thereon, and the mortgagee was induced to release the original mortgage upon a fraudulent representation that a mortgage clause would be inserted in certain insurance policies to protect her interest as such mortgagee, the release will be set aside and the former mortgage reinstated, provided there are no intervening equities of innocent third parties. "If the release is made through inadvertence or mistake, the lien of the mortgage may be reinstated by proper proceedings taken therefor." *Gadsden v. Johnson,* 65 Neb. 447. See *Frerking v. Thomas,* 64 Neb. 193.

Other assignments of alleged error have been pointed out, but we do not find it necessary to discuss them. The insurance policies were in full force and effect at the time of the destruction of the property by fire, and it is incumbent on the insurance company to respond in damages for the full amounts named in the policies, with lawful interest thereon.

The judgment is in all things

AFFIRMED.

PAINE, J., dissenting.

I am not in accord with the judgment of the majority of the court and feel bound to file a dissent in this case, and respectfully submit that the simple statement of the evidence in the case leaves little foundation in my opinion upon which to base the allegations of fraud upon which the title is returned to the former owners after a fire occurred and the parties find that a change in the mortgage clause had not accompanied the change of ownership and that the insurance cannot be collected.

The bill of exceptions shows that Belle Marion owned a hatchery business in Falls City, Nebraska, which she sold to Mayfield and Goldsmith, a copartnership, which thereafter did business in the name of the Richardson County Hatchery. It does not appear that the business had been making money, and she sold the real estate to the new owners for $2,500, and took back a mortgage

for $2,500, being the entire purchase price.

On February 25, 1929, Belle Marion had purchased a policy of fire insurance upon the frame building on the real estate in question in the sum of $2,500, and upon the sale of the property she had assigned this policy to the "Richardson County Hatchery Co.," and a mortgage clause had been given back to her at the time she sold the property on June 20, 1929. On June 22, 1929, the new purchasers had taken out for Belle Marion a second fire policy in her name in the same Dwelling House Mutual Insurance Company of Lincoln for $1,500 on the two-story frame building in which the hatchery was located, and upon the same day Belle Marion assigned this policy to the "Richardson County Hatchery Co.," and upon the same day Frank S. Lichty, agent of the insurance company, attached a mortgage clause to Mrs. Belle Marion, so two policies of insurance against fire, totaling $4,000, were now upon the property, and each of these policies was left with the agent of the company, who advanced the premium due upon the new policy to the insurance company and was trying to collect the same from the new purchasers. The policies both remained with the agent until after the fire occurred.

Upon October 16, 1929, Mayfield and Goldsmith sold the property to Bennett E. Cook by a written contract of purchase duly acknowledged before a notary public and which was recorded in the office of the register of deeds on November 1, 1929. In accordance with his contract of purchase and upon the same date, October 16, 1929, Bennett E. Cook and Leura Z. Cook, his wife, made, executed and acknowledged to Belle Marion a real estate mortgage upon the property which Cook had just purchased, securing a new note made by them payable to her for $2,200.

Mr. Goldsmith came to Mrs. Marion's place, according to her testimony, and paid her $300 upon the $2,500 mortgage which had been given her when she sold them the property, and told her that they had sold the property

to Mr. Cook, and that Cook had made her a new real estate mortgage for the balance of $2,200, and thereupon she gave up the old mortgage papers for $2,500.

She received the Cook mortgage upon November 14 and took it down to record it on the morning of November 15, and found on record a mechanic's lien of $150 which would be ahead of the new mortgage she had in her hand. She said this made her mad, and Mr. Goldsmith, coming into the office at that moment, promised her if she would give him until noon he would have the $150 mechanic's lien released. She returned after dinner and it had been released, and she thereupon released of record the mortgage given her by Mayfield and Goldsmith of $2,500, dated June 20, 1929, and recorded the new mortgage which had just been executed in her favor by the Cooks. Mayfield and Goldsmith with their wives executed a warranty deed of the property, which was mailed to Bennett E. Cook at Dawson, Nebraska. Everything was complete with two exceptions. The two insurance policies were still held in the office of Frank S. Lichty, the agent for the insurance company, because of the fact that he had advanced the premium to the company upon the second policy. Upon December 24, 1929, Mr. Lichty went to Goldsmith's office to collect the premium due upon the second policy. "Q. Tell what you said to him and he said to you as near as you can. A. I said I wanted him to pay me that premium, and he replied that they had no money on hand with which to pay it and that they had sold the property. Q. Is this what Goldsmith said to you? A. Yes, sir. Q. All right, go ahead and tell us all he said about that. A. I told him I must have my money, that I had at their request advanced the premium due the insurance company and that I must insist on collecting the amount due me. He replied that they would pay me $10 on that now, that was that date, and that they couldn't pay me any more at that time but that they had sold the property, and I asked who to. Q. Go ahead, tell us all that was said. A. When

I was informed that the property had been sold I asked who they had sold it to and Mr. Goldsmith says to Mr. Bennett Cook. I asked him if the transaction had been completed and he replied that it had been and that their mortgage was released and that they had nothing to do with the building any more, was entirely out of the picture. Then I informed Mr. Goldsmith that, that being true, the insurance was of no value to him as insurance and that it should be transferred to Mr. Cook, but he said inasmuch as there was some time for this policy to run before its expiration that they would transfer this policy to Mr. Cook * * * provided he would pay them the unearned premium, and that unless he and Cook could agree on that he asked if he could not turn those policies into the company and have the unearned premium returned to him. I told him not the unearned premium but the short rate unearned premium would be returned to him, and he informed me that he would see Mr. Cook within the next few days and complete the arrangements one way or the other."

Upon the 4th of January, in a pool hall, Mr. Lichty found Mr. Cook, and testifies as follows: "Q. What did he say in reply to that when you told him Goldsmith had said to you that they had turned this property or sold this property to him? What, if anything, did he say? A. He said when he bought it they told him there was a year's insurance paid up on it." Mr. Lichty testified the next time that he talked to Mr. Cook was on the 6th day of January, the day before the fire, in his office, when Mr. Cook asked him to write on a slip of paper the amount of the unearned premium on the policy and he would see Mr. Goldsmith about it. This was the situation at the time the fire occurred, and the morning after the fire Mr. Cook and Mr. Goldsmith were in the office of Mr. Lichty and he was asked what did they say, and his answer to the question by the court was: "We talked the matter over yesterday for three-quarters of an hour and we agreed

that I was going to pay the unearned premium and they was going to transfer the insurance to me." So that the morning after the fire the first statement of the then owner of the property was that the day before he had intended to pay at least the unearned portion of the premium on the second policy, which premium the insurance agent had advanced; and that it would be transferred to him, and if no fire had occurred doubtless that is what would have happened and there would have been no question whatever of any fraud in the case.

The situation at that time was that two policies of insurance were both made out to Mrs. Belle Marion and assigned by her to "Richardson County Hatchery Co.," the firm name of Mayfield and Goldsmith, who had parted with the title to the property by a warranty deed delivered to the purchaser, and the mortgage clause upon the two policies was payable to Belle Marion to secure the payment of a $2,500 mortgage made by Mayfield and Goldsmith, which mortgage had been paid, canceled and released of record. A little difference of opinion as to what payments should have been made upon an incubator and upon certain outstanding bills is then magnified into a mountain of fraud, and the decree of the district court orders the release executed by Belle Marion upon November 15, 1929, be canceled and set aside; the new mortgage given to her by Cook, and recorded by her upon the same date, is ordered canceled and released, and it is decreed that the Dwelling House Mutual Insurance Company shall pay a total of $4,097.21 upon the policy of $2,500 taken out by Belle Marion on February 25, 1929, and the policy taken out by Mayfield and Cook upon June 22, 1929, for $1,500, upon which the agent had never been paid but $10 of the premium due thereon of $24.76, and in addition thereto that the insurance company should pay an attorney's fee of $375.

The writer of this opinion is well aware, as the appellee suggests, that a contract of insurance is construed most

strongly against the insurer (*Haas v. Mutual Life Ins. Co.,* 84 Neb. 682), yet the surrender by Cook of an unrecorded deed to property upon which he has given a real estate mortgage does not reinvest the title in the grantor. *Brown v. Hartman,* 57 Neb. 341. The proof in this case lacks much of proving fraud by a preponderance of the evidence. See *Stetson v. Riggs,* 37 Neb. 797; also *Peterson v. Schaberg,* 116 Neb. 346, where Goss, C. J., sets out that to maintain an action for false representations the following elements must be proved: "(1) What representation was made; (2) that it was false; (3) that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact; (4) that the plaintiff believed the representation to be true; (5) that the plaintiff relied on and acted upon the representation; (6) that the plaintiff was thereby injured; and (7) the amount of the damages."

"An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events." 26 C. J. 1087. See *Cerny v. Paxton & Gallagher Co.,* 78 Neb. 134, 10 L. R. A. n. s. 640; Note, 51 A. L. R. 55; *Pollard v. McKenney,* 69 Neb. 742; *Cohn v. Broadhead,* 51 Neb. 834.

Appellant insists that, "not only must one seeking to rescind tender back whatever he has received, but, in order to maintain an action in rescission, this must be done before the suit is started, and he must allege in his petition the fact that he has made such a tender."

"One who rescinds for fraud must act promptly upon discovery of the facts, announcing his intention to his adversary and returning what he has received. This should be done before he begins his action, nor should he fail to allege in his petition that he has so rescinded." *Rasmussen v. Hungerford Potato Growers' Ass'n,* 111 Neb. 58. This decision is cited with approval by Circuit Judge Kenyon in *Albert Lea Foundry Co. v. Iowa Savings Bank,* 21 Fed. (2d) 515.

The writer submits that the evidence falls far short of being sufficient to sustain the charge of fraud, and fails to show rescission as required by the decisions of our court, and that the judgment of the district court should be reversed.