DWIGHT PECK, AND OTHERS, RESPONDENTS, v.
CECILIA REES, APPELLANT.

DEED.—DONATIO CAUSA MORTIS.—DELIVERY AFTER DEATH —Where
a grantor, without any consideration good or valuable, made,
executed and delivered to one J. a deed for certain property
in favor of the appellant as grantee, but J. had no authority
from appellant to receive the deed, and was directed by the
grantor to keep the deed until after his (grantor's) death, and
one week after grantor's death J. sent the deed to appellant,
who, until she received the deed through the mail, had no
knowledge of its existence; *held*, no equity was created in
favor of appellant by grantor's intention, and that J.'s agency
was revoked by the grantor's death, and that there was **no**
delivery of the deed.

AMENDMENT.—DISCRETION OF COURT.—Where a defendant, at the
close of the evidence, seeks to amend his pleading in order to
strike out an admission, it is not error for the court to refuse
it when the same admission is made in another part of the
pleading and is already established by evidence introduced
without objection.

APPEAL from a judgment of the district court of the
first district. The opinion states the facts.

*Messrs. Miller and Maginnis,* for the appellant.

*Messrs. Smith and Smith,* for the respondents.

ANDERSON, J.:

The complaint in this case alleges that the plaintiff,
Julia Eliza Peck, is the widow, and the other plaintiffs
are the children and heirs at law of Henry Peck, late
of Oneida county, Idaho Territory, deceased; that Henry
Peck died at Malad, Oneida county, Idaho Territory, on
or about the 23d day of July, 1889; that about ten

days before his death he made a will by which he devised to the defendant certain real estate situated in Cache county, Utah Territory; that the devise in the will was for the purpose of having carried out the testator's temple work (meaning thereby certain pious, superstitious, and polygamous practices of the Mormon church), to be carried on in the Mormon temple at Logan, Cache county, Utah; that the will was duly probated August 29, 1889, and the plaintiffs, Howard Peck and Dwight Peck, duly qualified as executors, and letters testamentary were duly issued to them on that day; that after the execution of the will, to-wit, on the 17th day of July, 1889, the said Henry Peck executed a deed for the same real estate to the defendant, but that the deed was wholly without consideration, and was never delivered, and that after the death of the said Henry Peck the deed came wrongfully into the possession of the defendant, and she caused the same to be recorded in the records of Cache county, Utah.

The plaintiffs claim to be the owners of the land under the will and as heirs of Henry Peck, and asked to have their title quieted against the defendant. The defendant, by her answer, denied that the deed was never delivered, or that it came wrongfully into her possession, and alleged that the deed was duly executed by Peck in his lifetime, and "by him delivered to one Jenkin Jones, unconditionally, for the use and benefit of this defendant, with express directions and authority to deliver the same to this defendant upon the death of said Henry Peck, as a gift *causa mortis;* and that said deed was made and delivered in anticipation of the approaching death of said Henry Peck," and that Jones delivered the deed to her in pursuance of such authority. The depositions of Jenkin Jones, Henry R. Jones, and Howard Peck were introduced and read on behalf of

plaintiffs. No evidence was offered by the defendant. At the close of the evidence the defendant asked leave of the court to amend her answer by striking out the words "*causa mortis,* and that said deed was made and delivered in anticipation of the approaching death of said Henry Peck," which was refused by the court, to which ruling the defendant excepted, and assigns the same as error.

The court found that Henry Peck was the owner of the land in controversy at the time of his death; that within ten days prior to his death he made an attempted devise of his property to the defendant, Cecilia Rees, by will, which devise was void under the statutes of Idaho Territory, where he resided prior to his death on the 22d day of July, 1889, and after his said will had been written; "and as an attempt to make a testamentary disposition of said property to the defendant, and without any consideration whatever, either good or valuable, made, executed and delivered to one Jenkin Jones a deed for said property, said deed being in favor of the defendant, Cecilia Rees, she being named as grantee therein; that Jenkin Jones had no authority from the defendant to receive said deed, and was directed by said Henry Peck to keep said deed until after his death, and then deliver the same to the defendant; that about one week after the death of Henry Peck, Jenkin Jones sent said deed to the defendant through the United States postoffice; that until she received said deed through the mail the defendant had no knowledge of the existence of such deed, or of any deed." The court found that the plaintiffs are the only heirs at law of said Henry Peck, and are the residuary legatees under the will. As conclusions of law, the court found that the deed never became operative, and is void; that the plaintiffs are the owners of the property, and entitled to a decree quieting their

title to the same. The defendant made a motion for a new trial, which was overruled, and the appeal is from the findings and judgment.

Counsel for defendant say in their brief that all claim of the defendant under the will is abandoned, and that they rest their case on the deed alone, and that the only question they present for determination is, was there a delivery of the deed? They further say in their printed brief in this court that: "It is admitted that the grantee, Cecilia Rees, had no knowledge of the execution of the deed until received by her through the postoffice, about one week after the death of Henry Peck. It is further admitted that neither the grantee, nor any person for her, paid any consideration for the deed." The evidence as to the delivery of the deed is as follows: Jenkin Jones, a witness for the plaintiffs, testified: "I knew Henry Peck in his lifetime. I saw a deed for the Cache county land, which appeared to be executed by him, and the deed was in my possession. Henry R. Evans delivered the deed to me at my residence in Malad City, just a little time before Henry Peck's death, and said, at the time of delivery, here was a deed for me to keep. No instructions at that time were given me. The deed was delivered to Cecilia Rees, after the death of Henry Peck, fully a week. I sent it, addressed to her, through the postoffice. * * * A short time before the death of Henry Peck he called on me, and told me he was very sick, and did not know whether he would get well or not, and said he might make a paper or deed for Cecilia Rees, and asked me if I would deliver it, and told me to keep the matter to myself." Henry R. Evans testified: "Was acquainted with Henry Peck in his lifetime. I wrote a deed for him, conveying to Cecilia Rees the property in Cache county, and described in the complaint. * * * I had possession of the deed after it

was made, and delivered it to Jenkin Jones. I received from Henry Peck instructions to deliver the deed to Jenkin Jones, with directions that he should send it to Mrs. Cecilia Rees, and I gave Jenkin Jones that direction. The deed was made and executed about a week before the death of Henry Peck. I delivered the deed to Jenkin Jones on the day it was made and executed. The deed was made in view of the approaching death of Henry Peck, and there was no express instructions whether it was or was not to be delivered in case he should live. He said Jenkin Jones would know what to do with it. I had already written his will for him."

Howard Peck, a son of Henry Peck, and one of the plaintiffs in this action, testified that the deed was intended by his father as a gift in view of approaching death.

It will be observed that, even if the court had permitted the defendant to make the proposed amendment to the answer, striking out the admission that the deed was intended as a gift in view of the approaching death of Henry Peck, still that fact was abundantly proved by the evidence already introduced, and without objection; so that, even if the court erred in refusing to allow the amendment, it worked no prejudice to the defendant. The right to make the amendment is claimed under section 3256, 2 Comp. Laws 1888. We think there was no error in refusing the amendment. If the amendment had been made, the answer would have still contained the affirmative allegation that Peck executed and delivered the deed to Jenkin Jones for her benefit, and "with express directions and authority to deliver the same to this defendant upon the death of said Henry Peck."

While there can be but little doubt that the deed from Peck to the defendant was made to evade the statute of Idaho Territory, which rendered the devise in the will to

defendant void in case Peck should die in less than thirty days after the execution of the will, still he had a right to deed her the property as a gift, and confer upon her a good title; and the only question for determination is, did he so far execute his intentions as to render the deed operative? It is essential to the validity of every deed that it be delivered to and accepted by the grantee. It need not be delivered by the grantor himself, but may be delivered by any one duly authorized by him to make such delivery. Nor need it be delivered to the grantee in person, but may be delivered to any one authorized by the grantee to receive or accept it. If, however, a grantor execute a deed of gift of real estate, and place it in the hands of an agent to deliver to the grantee, and the grantor dies before delivery, no delivery can then be made, because the authority of the agent to act ended with the death of the principal; and in this case, unless the delivery to the agent Jones was a delivery to the defendant, there was no such delivery of the deed as would render it operative, and transfer the title to the defendant.

Peck being under no obligation, legal or moral, by reason of indebtedness, kinship, or otherwise, to convey the land to the defendant, no equity was created in her favor by reason of his intention to make the gift, superior to the equity of his heirs, and unless he succeeded in making the gift to her complete in his lifetime by delivery of the deed, no title could pass to her. But Jones was not the agent of the defendant to accept the deed for her, and hence a delivery to him was not a delivery to her. It does not appear in the evidence that Jones even knew her, but does appear that he was not her agent for any purpose connected with the deed, for it is conceded she had no knowledge that such a deed, or any deed, would be made by Peck to her. Jones was the agent of

Peck, and had no authority to do anything with the deed except as authorized by Peck, and Peck could have demanded and regained possession of it at any time dur-. ing his lifetime. While, therefore, it was out of his immediate possession, it was under his control, and liable at all times to be recalled and canceled by Peck. The title, then, was in Peck at the time of his death, and not in defendant, for she had not so much as heard of the deed, much less accepted it, and did not hear of it for a week after Peck's death. Suppose she had died the next day after Peck's death, but before Jones forwarded her the deed, to whose heirs would the property have descended,—the heirs of Peck or the heirs of the defendant? If to her heirs, it could only be because the title was fully vested in her by the execution of the deed, although she had never accepted it by herself or agent, nor even heard of it, and we would have a case where a delivery of a deed was not essential to transfer title.

If we concede that Jones could deliver the deed to the defendant a week after the death of Peck, and, when delivered to her, it would vest the title in her from that date, where was the title between the death of Peck and the delivery of the deed to the defendant? If the title was in abeyance during this time,—floating around, as it were,—what would have been the result if Jones had lost or destroyed or refused to deliver the deed? Suppose the instructions to Jones should be construed to mean that he was not to await the death of Peck before delivering the deed, and Peck had demanded the return to him of the deed, and that the defendant had heard of the deed and demanded of Jones that he deliver it to her, who would have had the greater right to it? We think there can be no question but that Jones, being the agent of Peck, would have been bound to redeliver the deed to him, for it is of the essence of a gift that

it be voluntary, and may be recalled at any time before actual completion. In *Younge* v. *Guilbeau,* 3 Wall. 636, the grantor executed and caused to be recorded a deed to the grantee, without the knowledge of the grantee, and he did not know of its execution until after the death of the grantor, when the deed was found among his papers. In a suit between the heir of the grantor and those holding under the grantee the Supreme Court of the United States said: "The delivery of the deed is essential to the transfer of title. It is the final act without which all other formalities are ineffectual. To constitute such delivery the grantor must part with the possession of the deed, or the right to retain it. Its registry by him is entitled to great consideration upon this point, and might, perhaps, justify, in the absence of opposing evidence, a presumption of delivery."

In *Parmelee* v. *Simpson,* 5 Wall. 81, one Bovey conveyed certain real estate to Simpson, to whom he was indebted, and placed the deed on record without the knowledge of Simpson. Two days later he mortgaged the same lands to Parmelee, and the mortgage was recorded before Simpson knew of the deed to him, and the court held that the mortgage took precedence over the deed. The court said: "The placing of the deed on record was Bovey's own act, and done without the assent of Simpson. Under this state of facts there was manifestly no delivery. The execution and registration of a deed, and delivery of it for that purpose, does not vest the title in the grantee. If Simpson had agreed to accept the deed in liquidation of his debt, and constituted the register his agent to receive it, then the delivery of the deed to the register would have been, in legal contemplation, a delivery to him." See, also, *Maynard* v. *Maynard,* 10 Mass. 456; *Samson* v. *Thornton,* 3 Metc. (Mass.) 281; *Jackson* v. *Phipps,* 12 Johns. 419;

*Jackson* v. *Leek*, 12 Wend. 105. So, in this case, the delivery of the deed to Jones did not vest the title in the defendant; and before she knew of its existence and had an opportunity to accept it, the title passed upon the death of Peck to the plaintiffs by operation of law. The judgment of the district court is affirmed.

ZANE, C. J., and BLACKBURN, J., concurred.