JAMES F. HALL *v.* W. B. J. BARNETT ET AL.

| 71 | 37 |
| 78 | 41 |

1. DEED. *Delivery. Intention. Retention of paper. Evidence.*

   Delivery is a question of intention, and, while it may be effected without the maker's parting with the paper, his retention of it is always a circumstance strongly evidential of a want of delivery.

2. SAME. *Transaction not completed. Deeds destroyed.*

   Where it is deducible from all the circumstances that the purpose of one signing and acknowledging certain deeds, and handing them to the person named as grantee in one of them, to be placed in the trunk of the grantor, is not to have them take effect immediately, but to have them ready to complete the transaction afterwards, and he never does this, but destroys the instruments, there is no delivery.

FROM the chancery court of Madison county.

HON. H. C. CONN, Chancellor.

John Hall, of Madison county, Mississippi, owned two plantations in said county—the Hollingsworth place and the

Mhoon place. He became an invalid, and was unable to look after his business affairs. He had two invalid unmarried daughters, who were dependent upon him for support. In January, 1892, being convinced that he would not recover his health, he made an agreement with his son, James F. Hall, to come and live with him, and take care of him and his two daughters until his death. In consideration of this, he was to give to his said son the Hollingsworth place, upon which James had resided for a number of years. At the same time, he agreed with Mrs. Montgomery, a married daughter, that he would give her the Mhoon place, upon condition that she should support the two invalid daughters after his death. Mrs. Montgomery agreed to this, provided her husband would assent to it, and it was agreed between said John Hall and his son James that if Mr. Montgomery would not assent to the arrangement, then James was 'to have the Mhoon place, on condition that he would support his two sisters after the father's death. The matter having thus far been agreed upon, a justice of the peace was sent for to write the deeds. A deed was prepared and signed by said John Hall conveying to James the said Hollingsworth place. This deed recited a consideration of one dollar and natural love. After being acknowledged, it was handed to James by the father, with instructions to place it in a trunk, which belonged to the said John Hall, and was kept in the room where he was sick. A deed was then prepared, conveying the Mhoon place to Mrs. Montgomery, expressing the same consideration. This deed was also signed and acknowledged by the father, and handed to the son, with instructions to place it in the trunk, which was done. The next day, the justice of the peace being still present, a deed was prepared, conveying the Mhoon place to James. It was understood that this deed was to be used in case Mr. Montgomery would not assent to the arrangement by which his wife was to support her two sisters after the death of the father. It was signed and acknowledged, and like- wise handed to James by his father, with instructions to lock

it up in the trunk with the other deeds, which was done. A will was then prepared, which was signed by John Hall, and duly witnessed, and this was also handed to James Hall, and was placed in the trunk, and it was locked, James retaining the key. In the will no mention was made of the property embraced in the deeds, but it disposed of all other property of the testator not already disposed of. James F. Hall and Mrs. Montgomery were not mentioned in the will. James did not live with his father at the time, and, while he retained the key, the trunk belonged to his father, and in it the latter kept his valuable papers, and, sometimes, money. It was kept in the room, and was under his immediate control.

A few weeks after the deeds were thus drawn, it appears that John Hall became displeased with his son. At any rate, he directed an attendant to open the trunk, and the two deeds in favor of James were handed to him, and he destroyed them. A few months after this he died, and after his death James F. Hall filed the bill in this case against the appellees to establish his title to the Hollingsworth place under the deed signed and acknowledged as above.

From a decree dismissing the bill, complainant appeals.

*Downs & Ward*, for appellant.

It is evident from the testimony that John Hall, at the time of executing the deed, intended that the title to the Hollingsworth place should vest *eo instanti* in his son, who had lived on the place for twenty years. If, when there was a manual transition of the deed from the grantor, it was intended that title should vest in the grantee, it makes no difference what disposition was made of it afterward.

But the evidence shows that the grantee had possession of it, for he retained in his possession the key of the trunk, and no one had the right to take possession of the deed without his consent. It remained thus in the possession of the grantee until it was destroyed. If it was a worthless document, why destroy it? Then, again, why should the grantor go through

all the formalities necessary to the validity of the deed, if his acts were to amount to nothing?

The fact that John Hall made a will in favor of his other children, in which he did not undertake to dispose of the property conveyed by the deeds, but did devise all of his other property, was a clear acknowledgment that he had conveyed the lands. We insist that when the deed was delivered to the grantee the transaction was completed, so far as the Hollingsworth place was concerned, and the title thereto vested in him. The effort of the grantor, after his mind had become more enfeebled, to undo what had been done was of no avail. His acts and declarations after the delivery go for naught.

*J. K. Hamblen* and *F. B. Pratt*, for appellees.

There was no delivery of any of the deeds. The fact that the deed was handed to James cuts no figure, for he was instructed to place it in the possession and under the control of his father. If John Hall, in handing the deed to his son, intended it as a delivery, he would have given no instructions, for the son was of full age, and instructions would have been unnecessary. If he had given any instructions or advice, it would have been to place the deed on record. Handing it to James, with the instructions accompanying, constituted no more a delivery than if the deed had been handed to a servant with like instructions.

It is not pretended that the deed to James of the Mhoon place was delivered, and yet it went through the same formality. If one was delivered, they both were. None of the deeds passed out of the possession or beyond the control of John Hall. He had a fixed intention that they should *not* pass beyond his control at that time.

The complainant paid no consideration and performed no service for the execution of the deed, and, it having never been delivered, he is not entitled to recover.

CAMPBELL, C. J., delivered the opinion of the court.

If the evidence warranted the belief that John Hall, in signing the several papers and acknowledging the conveyances and directing them to be taken charge of by his son, James F. Hall, and put in the trunk of John Hall, intended this as a completed and finished transaction, and that he intended a delivery of the conveyances to take effect immediately by virtue of such delivery, the fact that he retained the custody of the papers would not defeat their effect as conveyances, for delivery may be made of an instrument without the maker parting with the paper, though his retention of it is always a circumstance strongly evidential of a want of final renunciation of control of the instrument. The evidence in this case strongly suggests that Mr. Hall had the several papers drawn and signed and acknowledged the conveyances while the officer who drew them and took his acknowledgment was at hand, and that while they contained a declaration of his then purpose as to the disposition of his property, he did not intend such delivery then of the papers as completed the transfer beyond his power to recall what he had done.

Delivery is a question of intention, and it is deducible from all the circumstances of the transaction, that the intention of Mr. Hall was not to deliver the instruments, but to have them ready and afterward to complete the transaction, and he never did it, but destroyed the conveyances. The circumstance of his making a conveyance of a plantation to his daughter, Mrs. Montgomery, which it was not known would be accepted, and his making a similar conveyance of the same plantation to his son, James F. Hall, which was intended to be operative if that to Mrs. Montgomery should not be accepted, shows clearly the uncompleted character of the transaction. The scheme, plainly, was to convey one plantation to J. F. Hall, on some understanding between the father and son, and another plantation to Mrs. Montgomery, on certain conditions, and if she was not willing to accept

the conveyance, a similar conveyance in all respects was to be made of that plantation to J. F. Hall. Mrs. Montgomery had said she would accept if her husband was willing, but it was not known that he would consent, and hence it was uncertain whether the conveyance to Mrs. Montgomery would become operative. Therefore Mr. Hall had prepared a conveyance to J. F. Hall of the land embraced in that to Mrs. Montgomery. He also had his will drawn, and signed it, and all the papers, parts of his testamentary scheme, were dealt with in the same way—that is, laid aside for further action.

This is the view held by the chancellor, which we think is correct, and the decree dismissing the bill will be

*Affirmed.*