## Hacker v. Deaton, et al.

(Decided October 5, 1923.)

Appeal from Perry Circuit Court.

1. Deeds—Evidence Held to Show Deed Not Forgery.—In an action involving a deed, evidence held to show that the deed was in fact executed and was not a forgery.

2. Deeds—Recordation Unnecessary Between Parties.—As between parties thereto, recordation of a deed is not necessary to make it binding or valid.

3. Evidence—Testimony of One Appearing as Grantor as Approaching Grantee with View to Selling Land Held Self-Serving and not to Show Ignorance of Existence of Deed Claimed to be Forged.—Testimony of one appearing as grantor in a deed, which he claimed was a forgery, that after the alleged execution of the deed he approached the grantee with the view of selling the land, was self-serving, and did not indicate that such alleged grantor was not apprised of the existence of the deed.

4. Deeds—Burden of Showing Delivery on One Claiming Under Deed.
—It is incumbent upon one claiming title under a deed to show a
delivery of the deed and the grantee's acceptance of it.

5. Deeds—"Delivery" Includes Acceptance.—The term "delivery" in
its legal and complete sense as regards a deed, includes the accept-
ance by the grantee.

6. Deeds—Delivery Inferred from Acts or Words.—Delivery of a deed
may be inferred from acts without words, or from words without
acts, or from both combined.

7. Deeds—Delivery Held Indicated by Acts of Parties.—Where grantor
defended a suit on a mortgage note on the ground that the note had
been discharged by a valid conveyance of the land in dispute, and
a judgment was rendered sustaining his defense, and both he and
the grantee accepted the judgment as final, and treated the deed,
which was in the possession of the grantee, as having been deliv-
ered and accepted by him, there was a valid delivery.

FAULKNER, STANFILL & FAULKNER for appellant.

MILLER & KRAFT for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirm-
ing.

The subject of this litigation is a deed, purporting to
have been executed by Robert Hacker and his wife on
May 3, 1913. On its face it conveys thirty acres of land
to John G. Deaton. Hacker claims that the signatures of
himself and his wife to the deed, with the acknowledg-
ments thereon, are forgeries, and the Hughes Lumber
Company, holder of the title through mesne conveyances
from Deaton, contends that the instrument was duly and
regularly executed and delivered. From a judgment
sustaining the latter contention Hacker appeals.

The issue is one of fact. Appellant testified that he
never signed or acknowledged any deed before Hugh
Combs, the notary whose name appears on this deed as
taking his acknowledgment, and also introduced several
witnesses, who testified that on May 3, 1913, they were at
his home, where Hacker was the entire day, and that
Combs was not on the place that day and Hacker did not
on that day sign and acknowledge the deed. These wit-
nesses were members of Hacker's family or relatives. It
is argued that this evidence so overwhelmingly prepon-
derates over the evidence for appellee as to require an
annulment of the deed.

Appellee introduced only one witness as to the act of
executing the deed. That witness was the notary public,

who testified that Hacker and his wife signed the deed and acknowledged it before him at Hacker's home on May 3, 1913. But in addition to this evidence there are facts and circumstances shown in the record that in our opinion are decisive of the point at issue. It appears from the testimony of Hacker and from the record in a suit brought against him by John G. Deaton, which was put in evidence, that prior to the date of the paper in dispute Deaton held a mortgage of $445.00 on the land in controversy; that he instituted a suit in the Perry circuit court to foreclose that mortgage; that in defending that proceeding Hacker testified that he had discharged the debt by conveying to Deaton the land in controversy and by executing to him a new note for about $118.00; and that he and his wife had signed and acknowledged the deed conveying the land and had delivered it to the clerk for Deaton. Furthermore, appellee filed in this case a receipt which had been filed in the former suit, showing that the mortgage note had been settled by the conveyance of some land and the execution of a new note, and he also filed a copy of the judgment of the court in the former suit reciting that the mortgage note had been paid by the conveyance of the tract of land described in the petition and by the execution of a new note for $118.40. This judgment was rendered on September 1, 1914, and, although the new note and the receipt were dated February 12, 1912, and the deed in dispute was executed on May 3, 1913, it appears that appellant had executed a deed prior to or on February 12, 1912, and that deed had been destroyed in a fire that burned the office of a lawyer at Hazard, and thereafter, but before the judgment of September 1, 1914, was entered, another deed was executed, which is undoubtedly the deed of May 3, 1913.

Without deciding the question as to the right of appellant to attack the verity of the notarial certificate on the deed, but looking to the evidence, as briefly detailed, it seems clear to us that the deed was in fact executed and is not a forgery. It is said, however, that there are two circumstances in the record of controlling effect. They are: The deed was not put to record until three years after it was executed; and after its execution appellant approached appellee with the view of selling the land. We do not regard these incidents as tending to establish appellant's claim. As to the first it is

sufficient to say that appellant was not an innocent purchaser, and as between him and appellee the recordation of the instrument was not necessary to make it binding or valid. The testimony in respect to the second is self-serving and does not indicate that appellant was not apprised of the existence of the deed—especially is that true when it is considered in connection with the disclosures in the foreclosure proceeding to the effect that appellant not only knew of the deed but relied on it to defeat a recovery on the note.

But it is earnestly argued on the authority of many decisions cited in the brief of counsel that it was incumbent upon appellee to show a delivery of the deed to the grantee and his acceptance of it, which it is said the record fails to do. We are in accord with the authorities cited by appellant on this point, and we may add that the term delivery in its legal and complete sense includes an acceptance by the grantee, but nevertheless it is our view that there was such a delivery as made the deed effective.

It is everywhere recognized that delivery may be inferred from acts without words, or from words without acts, or from both combined. Here appellant defended the suit for a recovery on the mortgage note on the ground that the note had been discharged in part by a valid conveyance of the land in dispute. A judgment was rendered in that case sustaining his defense, and both he and Deaton accepted the judgment as final. Thus both of them treated the deed which was in the possession of Deaton as having been delivered to Deaton and accepted by him, and Deaton undoubtedly accepted it in part payment of the mortgage debt as evidenced by the fact that he accepted the note of $118.00 in discharge of the balance of that debt. Hence the delivery was not only effected but was adjudged to have been effected.

Our conclusion therefore is that the deed was legally executed and delivered, and the chancellor correctly adjudged that it was valid. The judgment is accordingly affirmed.