LADNER *v.* MORAN.

(In Banc.   April 28, 1941.)

[1 So. (2d) 781.   No. 34551.]

Robert L. Genin, of Bay St. Louis, for appellant.

**W. W. Stockstill** and **Dan M. Russell, Jr.,** both of Bay St. Louis, for appellee.

Argued orally by **R. L. Genin**, for appellant, and by **W. W. Stockstill** and **Dan M. Russell, Jr.**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Appellant, who was complainant in the trial court, filed a bill to cancel as a cloud upon her title to certain realty a deed from Mrs. Amanda Williams to the defendant. It was alleged that complainant was, as the adopted daughter of Mrs. Williams, who died intestate, her sole heir at law, and entitled to said property. The validity of the adoption proceedings are attacked by defendant, but for reasons hereinafter stated we find no occasion to examine this contention.

The instrument in question was signed and acknowledged by Mrs. Williams in 1931, at a time when she was married and living with her husband upon said property as a homestead. Her husband did not sign the instrument which was at such time deposited by the grantor with the Hancock County Bank under conditions and directions indicated by a memorandum delivered to the grantor as follows: "This is to be delivered to no one except Mrs. Amanda Williams unless she were to die before calling for it and then it is to be delivered to Clarence Moran." A similar notation was made upon the envelope containing the deed. Mr. Williams died in 1933, and Mrs. Williams in 1935 married Vincent Moran, the father of appellee. At the time of her death in 1937, Mrs. Williams (Moran) had again become a widow. In the meantime the instrument had remained in custody of the bank subject to the directions contained in the memorandum.

Shortly before grantor's death, while she was preparing to go to a hospital for a serious operation, she delivered to appellee the memorandum given to her by the

depository bank, using, according to one of the witnesses then present, the following language: ''Take this card and go get your deed at the bank. I don't feel like I am coming back.'' Corroboration as to substantially the same language was furnished by the witnesses, one of whom testified at one time that the language was substantially as quoted, at another time stated, ''She said 'Clarence take care of that card and when anything happens to me you go to the bank and get your deed and take care of everything.' '' The brother of appellee testified that the grantor said to him a few days after she had gone to the hospital, ''I gave Clarence the card to go get his deed out of the Hancock County Bank and you see that he does that and take it and have it recorded.'' There were other expressions by grantor showing her understanding of the effect of her declarations. See Beasley v. Beasley, 177 Miss. 522, 171 So. 680.

It is not our purpose to respond fully to appellant's contention that the deed to the homestead was void because executed by the wife without the signature of her husband, then living, for we hold that the deed was not fully executed as such until delivery. Authorities cited by appellant (Cummings v. Busby, 62 Miss. 195; Duncan v. Moore, 67 Miss. 136, 7 So. 221; Hubbard v. Sage Land & Imp. Co., 81 Miss. 616, 33 So. 413; Bolen v. Lilly & Son, 85 Miss. 344, 37 So. 811, 107 Am. St. Rep. 291; Levis-Zukoski v. McIntyre, 93 Miss. 806, 47 So. 435; Gardner v. Cook, 173 Miss. 244, 158 So. 150) deal with cases where there was actual delivery of a deed or deed of trust to the homestead without signature of the other spouse. Thus, our inquiry is not whether the instrument was void or voidable, but whether, in legal contemplation, it was a deed. The statement of the principle by which such conveyances are held void presupposes a deed, and such instrument is not a deed until delivery. In the meantime it is a mere scroll under control of the grantor who is free to withdraw it, destroy it, or complete its execution by delivery. The chancellor held that delivery of the card

to appellee, under the circumstances, and in view of the declarations of the grantor, constituted delivery of the deed. With this conclusion we agree. There is no need to justify it by endowing the delivery of the card with special solemnity as a ceremonial investiture. Its efficacy is chiefly as part of the evidence of grantor's intention to effect delivery. It is true that it was intimately allied with the deed itself, serving as a receipt therefor from the depository, and as grantor's only available identifying symbol of the deed itself, yet its controlling relevancy is that it evidences grantor's retention of the right to direct its disposition, and its surrender by grantor to grantee gives finality to her purpose, and evidences a ripening of her intention.

The written directions to the bank unquestionably constituted the bank as agent of the grantor, rather than of the grantee and, unaffected by subsequent expressions or acts indicating a contrary intention, betokens not a delivery but a deposit. Wilson v. Bridgeforth, 108 Miss. 199, 66 So. 524, 528; Hall v. Waddill, 78 Miss. 16, 26, 27 So. 936, 28 So. 831. Grantor's deposit of the instrument with the bank may have imposed on the bank duties with regard thereto; but all rights were retained by the grantor. The effect of the deposit was much as if grantor had said to the bank, "You may not during my life deliver this deed to anyone but me, but I can do so."

It would seem clear that if appellee had proceeded at once to procure from the bank delivery of the deed pursuant to grantor's directions, and during her lifetime, title would then have been complete. Yet it is not significant that appellee deferred his demand until after grantor's death. It is his right to the deed and to its delivery which fixes this status, rather than the time at which he chose to exercise this right. 16 Am. Jur., p. 518, sec. 143.

Since the bank was agent of the grantor, who retained the right to control the disposition of the deed, and by an altered intention, gave an earlier maturity to a purpose

formed six years before, the place of deposit is also without importance. In Young v. Elgin, 27 So. (Miss.) 595, 596, the place of deposit or safekeeping was the wardrobe of the grantor. While grantee's mother was preparing to leave home on account of her health she said to her daughter, "I have given you my home, and the deed to it is on top of the wardrobe, on this end, wrapped in a newspaper;" and after a kindly remonstrance by the daughter grantor added, "If anything happens, I want you to know where the deed is." This was the first knowledge gained by the grantee of the existence of the deed. It was held that a delivery was effected by the declared purpose and directions of the grantor. See, also, Moore v. Trott, 162 Cal. 268, 122 P. 462; 18 C. J., p. 205, sec. 101; Harkreader v. Clayton, 56 Miss. 383, 390, 31 Am. Rep. 369; Hall v. Barnett, 71 Miss. 37, 14 So. 732.

The chancellor was justified in finding that the grantor intended and effected delivery of the deed to appellee. Such conclusion pays deference not only to settled equitable principles, but also to the expressed intention and purpose of the grantor, and is just.

Affirmed.