WILBOURN *v.* WILBOURN.

In Banc. Oct. 25, 1948.

(37 So. (2d) 256)

Stone & Stone, for appellant.

John Horan and **Barnett, Barnett & Jones**, for appellee.

## Smith, J.

Appellee filed a suit in the Chancery Court of the First District of Yalobusha County praying cancellation of a deed, whereby he and his wife had conveyed to appellant, their son, the lands involved. The original bill was based on several grounds, but only two of them are of any importance in the record, considered by the chancellor, and necessary for us to review. The issues here are that the deed was never delivered; and that the son, as grantee therein, never accepted it.

The original bill did not waive answer under oath, and the answer was sworn. The learned chancellor rendered a decree for the father, and the son appealed.

The answer of the son, appellant, categorically denied the averments of the original bill, and charged affirma-

tively that he did accept the deed and instructed his father to have it recorded, which was done. He also answered that "it is not denied that the deed was not delivered after defendant left the army. It had been delivered before the defendant left the army" but he indulged the presumption that the mother's destruction of the deed by burning, as averred in the original bill, occurred before the defendant left the army. The answer further charged that: "And the defendant states again that the proposition of making the deed had been explained to the defendant by the complainant and accepted and carried out by the making of the deed and the acknowledgment of same and delivery and recording of same, and it all constituted a closed matter until the flare-up came after the defendant had come back from the war and entered into possession of the property. And it is here denied that the defendant has ever violated any of the terms and conditions of this deed or any duty that he had in the light of this deed . . . ; and the deed was accepted as written and acknowledged and as recorded, and never in the slightest degree by word or deed declined."

Appellant's mother, who had joined in the execution of this deed conveying their homestead, had departed this life before the trial. The father, appellee, testified that when the deed in controversy was executed, his son was absent in the army, and that he, the father, had it put upon record, and thereafter received it from the clerk and carried it home with him, all while the son, as stated, was in the army. Furthermore, he claimed never to have delivered it to the absent son, and later his deceased wife, a signer of the deed, destroyed it, as stated supra. During all of this time, appellee had been in possession of the land, and had never relinquished it.

On return from the army, however, the appellant married, and he and his wife and infant child moved into the home on the place then also occupied by appellee. It is in dispute whether or not appellant's mother was then

living or not, but we do not deem it of judicial importance on the issues of the case, conditions were unpleasant, and the son removed a short time before suit was filed. Appellant also testified his son declared he did not want the place and "wouldn't have it," which was in answer to a letter the father wrote his soldier-son overseas. He also said the son repeated this refusal after his return. The father admitted that after receiving the alleged declination from overseas, he persisted in his purpose of deeding the land to his absent son, and he and his wife went ahead and executed the deed, which was then lodged with the clerk for recording, and after it was recorded, he carried it home where it remained until his wife destroyed it before the son's return. The son never saw the actual deed.

The fact that the wife of the grantor may have protested against the execution of the deed to her husband's homestead, in which she finally joined, however, we think tends to show she realized that the title of the property was being passed to the son by the execution and recordation of the conveyance, and when she yielded her objection in that regard, and executed the deed with her husband, and permitted him to take charge of it she is bound by his act in delivering the conveyance to the clerk for recordation.

It is true that later she took the recorded deed from where it was being kept in the home and burned it before the son's return from the war, but she could not thereby destroy the record title which was then vested in the son. The delivery of the deed to the clerk and its recordation, under the circumstances, had not only vested the record title in the son, but also the legal title. The son could not thereafter divest himself of such title except by executing a conveyance back to the grantor or to someone else.

If there had been a valid judgment enrolled against the son in the county at the time the conveyance was executed and recorded, can it be said that either the son

or his father would be heard to deny that the title had become vested in the son, whether the judgment creditor had parted with anything on faith of the said recorded conveyance or not? Of course, no rights of a judgment creditor or innocent purchaser are here involved, but the fact that the son could have conveyed a good title following the recording of this conveyance in his favor is significant that he had acquired such a title.

The father answered "yes" to this question while on the witness stand, after stating that he was aged seventy-five years and in failing health, "and on that account, the probability being that you would never see him and have a chance to hand the deed to him like that (illustrating), you substituted this plan to write it out and acknowledge it and bring it to the clerk and put it on record for him after you had notified him of your intention, ain't that so?" He further testified that, since he knew he could not make manual delivery to his son, under the circumstances of his absence, the execution and recording of the deed was to "avoid that impossible situation."

The fact that the grantor could have, but did not, mail the recorded deed to his son is not significant on the question of whether or not he intended to deliver the deed, for the reason that since the son was in the army, and his movements uncertain, his father would necessarily have known the hazard of its loss in the mails or by the son while in the armed forces.

Appellee's daughter, the sister of appellant, also testified, on behalf of her father, that appellant wrote her father that he did not want the place, that is, the land, and not to make the deed to him. On cross-examination, it was shown she had considerable feeling against her brother for his course, and because of her opinion that he mistreated his parents.

The appellant-son, in his own behalf, testified that when he received the letter from his father relative to conveying the land to him, he did not refuse it, but told

his father "to do as he would like to do." To this, his father replied that the son was not to write any more, "he was going ahead and make it to me, make a deed to the place." He also testified that after his return home, he discovered that his father "had done as he had said and had signed and recorded" the deed. He never saw the deed or refused it, because it had been burned as set out above, and when he learned from the records in the clerk's office the facts of the execution and recordation of the deed he soon moved himself and family into the residence on the place conveyed him, then occupied by his parents. He continued to live there for approximately eleven months, when his father, at the instigation of appellant's brothers and sisters made it so unpleasant that he moved out. About a month later his father sued him to cancel the deed. Appellant still claimed the land.

As stated, ante, the learned chancellor granted the prayer of the original bill of the father, and cancelled the deed to the son, on the theory that there was no delivery of the deed by the parents, and no acceptance thereof by the son, valid in law. In his opinion, the chancellor stated: "Now it boils itself down to one proposition, as to whether there had been such a delivery of this deed by the placing of same upon the record which would cause the title to pass." And, also, he declared that: "One must intend to convey and the other willing to accept." In the final decree, it was ordered that the deed "is hereby cancelled of record and declared void, not having been actually delivered, . . ."

It is not necessary for us to consider the action of the chancellor in overruling appellant's demurrers to appellee's original bill, since we have concluded that the decree must be reversed, and a decree entered here for appellant. We, therefore, consider the assigned errors that the court erred in cancelling the deed, and in the conclusion there was no delivery thereof.

Appellee's burden to show an intention not to effect delivery is not supported by the preponderance of the

evidence. If it be conceded that the son protested against the conveyance, the persistence of appellee in his intention merely emphasized a determined purpose by the grantors. Such purpose was effectuated by delivery of the deed, after proper execution to the chancery clerk for recording. See Ladner v. Moran, 190 Miss. 826, 1 So. (2d) 781, citing Young v. Elgin, Miss. 27 So. 595; also Palmer v. Riggs, 197 Miss. 256, 19 So. (2d) 807, and Frederic v. Merchants & Marine Bank, 200 Miss. 755, 28 So. (2d) 843, 846. In the Frederic case the Bank retained the deed, after its execution, in its possession in its own vault, but the Court held that, notwithstanding, the evidence was sufficient to show a constructive delivery. The Court said: " a manual delivery of the instrument to the grantee is not always required. Delivery may be constructive as well as actual, and it is sufficient if it is apparent either from the words or acts of the grantor that it was his intention to treat the deed as having been delivered." The testimony of the appellee hereinbefore quoted clearly brings this case within the foregoing rule.

The appellee relies heavily upon the case of Lynch v. Lynch, 121 Miss. 752, 83 So. 807, 808. But the cases are distinguishable. In the case at bar, appellant proved by his father's testimony sufficient facts to establish delivery. He said manual delivery could not be made under the circumstances, and that he adopted the course executing and recording the deed "for him" (the son) in order to avoid that impossibility. There was nothing like that in the Lynch case, although the other circumstances were similar. In the latter case the Court said: His whole case rested, and rests, upon the presumption of delivery by the recording of the deed." In the instant case, delivery was established by evidence, as stated, in harmony with the announcement in the Frederic case, supra.

██ ██ Assuming that appellant was required to manifest acceptance, the record shows no disavowal by him

of the executed deed, and at most, only a deferential demurrer to the intention expressed by the grantor prior to execution and delivery of the deed. Upon discovery that the deed had been delivered and recorded, he accepted its terms and manifested such acceptance by actual occupancy of the property against the protests of the grantor. The appellee may have changed his mind but that did not change the deed. There is here a sufficient showing of an intent to receive since the grantee, upon discovery of the recorded deed, claimed and took possession. In this connection, see Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369, where it is said that acceptance may be express or implied from circumstances.

In view of what we have said above, we are of the opinion that the decree of the chancery court must be reversed, and decree entered here for appellant, and it is accordingly so ordered.

Reversed and decree here for appellant.

**Griffith, C. J.,** (concurring).

In addition to the cases cited in the main opinion as to the effect of the delivery of a deed to be recorded, it was distinctly held in Chapman v. Lott, 144 Miss. 841, 849, 110 So. 793, that by the grantor's actual, overt act, open to the world, in the delivery of the deed to the clerk to be recorded in the public records, the delivery is as complete, so far as delivery is concerned, as if there had been a manual delivery by the grantor into the very hands of the grantee.

It is true that a deed although delivered must be accepted in order that it shall be of final effect, but the rule as to acceptance is one for the protection of the grantee against having a grant thrust upon him encumbered with a burden or disadvantage. When, therefore, the grant is entirely beneficial to the grantee imposing

no burden upon him, the reason for requiring an affirmative acceptance disappears and acceptance will be implied in the absence of that which amounts to renunciation. So it is that when as to such a grant, delivery of the deed is made without the knowledge of the grantee and he has thus no opportunity to presently act for himself, the law will put in an acceptance for him, subject to his renunciation when he learns of the deed and of its delivery. This is the rule according to the great weight of authority when the deed is made to an infant who cannot presently accept or when the deed has been delivered for the grantee to an independent third party, the grantee being absent and knowing nothing about it; hence it should be the same when, as here, the deed 'has been deliver to an absent grantee through the overt act by the grantor in having it recorded, the recorder, the recorder being there the independent third party.

If appellee's contention were sustained and it were held that until actual acceptance by affirmative action the grantor could withdraw a recorded deed, it would mean that he has put of record not a deed but merely an offer of a deed and because not affirmatively accepted the grantor could deliver for record a second deed to another and a diffierent grantee, and what would an examiner of the title do with a situation like that? If he passes the title in favor of the first grantee, he would be met with the claim that the record of the second deed put 'him on notice that the first deed had not been accepted, and if he takes the title in favor of the second grantee he will do so with the risk that the first deed was in fact good. Illustrations could be multiplied.

Therefore, even if we should hold that the delivery of a deed by having it recorded is no more than an offer subject to withdrawal before actual affirmative acceptance, then as a matter of public policy and of public necessity we should further hold that when a grantor has thus made what purports to be his deed a matter of

public record, the only manner by which he may withdraw it is to file a bill, with lis pendens notice, before actual acceptance, to cancel the recorded deed, and this was not done here.

In my opinion the decree is erroneous and its reversal is correct.

**Montgomery, J.,** (dissenting).

I find that I cannot agree with the majority opinion, holding that there was a valid delivery of the deed by R. H. and Mary F. Wilbourn to their son, Landres Wilbourn.

In my humble judgment, little, if any, effect as proof can be given to any of the allegations in the answer of Landres Wilbourn, as is undertaken in the majority opinion. It is true, as therein stated, that the bill does not waive answer under oath and that the answer is under oath. However, the bill here is positively sworn to by complainant and under the provisions of Section 1294, Code 1942, the answer has "only such weight and credit as in view of the interest of the party making the same, and the other circumstances of the case, it may be fairly entitled to." Hence we must still look to the proof for the facts upon which to base a decision.

There is only one question to be decided here, and that is, whether there was a valid and legal delivery of the deed by R. H. and Mary F. Wilbourn to their son, Landres Wilbourn, and, as a part of that delivery, was there an acceptance of the deed by him. These questions must be determined from the evidence in this record, and it alone. Search this record, as we may, there cannot be found in it one scintilla of evidence, except for his own evidence, that Landres Wilbourn either by word, act, or implication consented that the deed be delivered to him and title to the lands thereby vested in him, or even knew of the signing, acknowledging and recording of the deed, as a fact, until after it had been des-

troyed. Lacking beyond logical contradiction, a legal acceptance of the deed by the grantee, it follows, in my humble judgment, as an inescapable conclusion that the deed, in contemplation of law, was never delivered.

What are the facts here? R. H. Wilbourn and his daughter, Mrs. Alma Pollan, both testified that before this deed was executed, R. H. Wilbourn wrote the grantee, Landres Wilbourn, and told him he was going to make him a deed to the home place and that Landres replied that he did not want the place and not to deed it to him. The only testimony contradicting this was offered by Landres Wilbourn, who testified that when his father wrote him, expressing an intention to deed him the land, he wrote back and told his father to suit himself and do as he liked about it. This is all the testimony on the question of acceptance. The Chancellor observed the witnesses and their demeanor upon the stand and accepted as true the testimony of R. H. Wilbourn and Mrs. Pollan. He rejected the testimony of Landres Wilbourn, and, in my judgment, correctly held that Landres Wilbourn refused to accept the deed. In this he was clearly supported by the overwhelming weight of the evidence—two to one—to say nothing of the Chancellor's observing the witnesses and being in a better position than we are to intelligently pass upon the credibility of the respective witnesses. In addition, it is clear from the record that the wife of R. H. Wilbourn, Mary F. Wilbourn, occupied the land, with her husband, as her homestead. She did not want to sign the deed to their son, Landres, but was persuaded by her husband to do so. She did acknowledge the deed, it is true, but there is not one scintilla of evidence in this record that she authorized any one to deliver the deed for her, or that she, in any manner whatever, performed any act that might be construed as a delivery of the deed. Her husband, R. H. Wilbourn, without any evidence here showing any authority from her so to do, took the deed to the chancery clerk's office and had it recorded, but as

soon as it was recorded, it was returned to R. H. Wilbourn. The record is silent as to whether he immediately turned the deed over to Mrs. Wilbourn, but the record is beyond dispute that, before Landres Wilbourn knew that the deed had been executed, Mrs. Wilbourn, in the presence of her daughter, Mrs. Alma Pollan, and Robert Pollan, got out the deed from her papers, had Robert Pollan to read it to be positive that it was the deed to Landres, and then, in their presence, burned the deed in the cookstove. It is reasonable to infer from the evidence that Mrs. Wilbourn took this deed into her possession, had no intention to immediately pass an estate but intended to keep it under her control without delivery, at all times, until she destroyed it; and she destroyed it at a time when Landres Wilbourn did not even know of its existence but had notified his parnets he would not accept the deed, if made.

In addition, when the deed was made on January 16, 1943, Landres had returned from World War II in the Pacific, and was in an army hospital in San Francisco. The deed was not mailed to him, but at all times remained in their exclusive control. R. H. Wilbourn and his wife continued to remain on the land as theretofore, farming it and in no way indicating any change of ownership. R. H. Wilbourn paid the taxes on the land and enjoyed its exclusive use and occupation. Landres Wilbourn was discharged from the military service in June 1943, but it was not until after the death of his mother, Mary F. Wilbourn, on October 23, 1946, and just before Christmas of that year, that Landres moved his family into the house with his father. He remained there some eleven months, and moved out a month before the trial in the lower court.

R. H. Wilbourn, when he took the witness stand, had been in bad health for several years. In addition, he was in his middle seventies. Under the pressure of cross-examination by astute counsel, he was caused to give the

following evidence on the question of the delivery of the deed:

"Q. And on that account, the probability being that you would never see him and have a chance to hand the deed to him like that (illustrating), you substituted this plan to write it out and acknowledge it and bring it in to the clerk and put it on record for him after you had notified him of your intention, ain't that so? A. Yes, sir.

"Q. And you did it with that full intention? A. I did it for the feeling I had for him, yes sir.

"Q. And I say you did it with that intention because that was the only delivery to him that you— A. (Interrupting) I did it for him on account of the feeling I had for him, and my sympathy. I done that on account of him being in the army and I didn't know what kind of shape he would come back in and it was through sympathy and feeling for him.

"Q. And you knew that it was utterly impossible with him in the country's service overseas to walk up and hand him the deed like that (illustrating), didn't you? A. Yes sir.

"Q. And it was to avoid that impossible situation that made you and your wife sign and acknowledge the deed and made you record it, ain't it? A. Yes sir."

This quoted testimony fails to convince that this sick old man knew anything about the legal import of a "delivery" of a deed. While counsel was testifying in his questions to the effect that the witness had placed the deed of record as substitute for manual delivery, the old man's mind was, as shown by his answers, dwelling upon why he ever signed the deed at all. The purpose of this evidence was to show delivery to the clerk for record with a present intent to immediately vest title, but such an intent does not appear from the conscious answers of the witness. The lower court, it seems, also was not moved by it sufficiently to hold that the act constituted a delivery with intention that the title should vest immediately.

So the facts in this case can be boiled down to the following: (1) That R. H. Wilbourn and Mary F. Wilbourn signed and acknowledged a deed to their homestead, conveying same to their son, Landres Wilbourn; (2) that Mary F. Wilbourn did not authorize anyone to deliver the deed for her to either the grantee, the clerk for record, or to any one; (3) that R. H. Wilbourn carried the deed to the clerk's office and had it recorded; (4) that the deed, after recording, was returned to R. H. Wilbourn, who placed it in Mrs. Wilbourn's possession; (5) that there was no change in the possession and enjoyment of the lands to indicate any change in ownership; (6) that Landres Wilbourn refused to accept any deed to the lands that might be made to him; and (7) that before Landres ever knew that the deed had in fact been signed, acknowledged, and recorded, Mrs. Wilbourn intentionally burned it in the cookstove with intent to destroy its effectiveness as a conveyance.

It is upon proof of these facts and no more that the majority opinion holds there was a valid delivery of the deed, and that title to the homestead vested immediately upon recordation of the deed in Landres Wilbourn. I cannot so construe the cases.

Delivery is the final and complete act which makes a deed effectual and causes it to pass the title irrevocably. No special formalities are necessary to constitute a delivery by the grantor and an acceptance by the grantee; but to make an instrument operate as a conveyance of title, there must be a delivery of the deed by the grantor with intent to thereby pass title to the grantee and there must be an acceptance of the deed by the grantee with intent that title shall thereby pass to him from the grantor, and if either the grantor does not so deliver the deed to the grantee or the grantee does not so accept the deed from the grantor, the deed is void for lack of delivery. This, in my humble judgment, has been the law in this state for almost a hundred years.

In Morgan v. Hazlehurst Lodge, 1876, 53 Miss. 665, the Court said:

"In the circuit court it was contended, and the argument has been renewed in this court by the defendants, that deed is an absolute nullity, because the grantee was not in esse, or rather because there was no grantee to whom delivery could be made, and who could accept. It is common learning that in every deed there must be a grantor and grantee, and a thing granted. To make the instrument operative there must be delivery by the grantor and *acceptance by the grantee.* The delivery is the final and complete act; *but there can be no delivery without an acceptance.*" (Italics ours.)

Again in Harkreader v. Clayton et al., 1789, 56 Miss. 383, 31 Am. Rep. 369, this Court held.

"The final and complete act which makes a deed effectual is *delivery.* Whilst no specific formalities are necessary, the grantor must consent that the deed shall pass irrevocably from his control, *and the grantee must accept it.* If, from what occurs between the grantor and grantee, *a delivery and acceptance* may be implied, it is equivalent to an actual delivery. It is the assent expressed or implied, to the act, which gives it efficacy." (Italics ours.)

The delivery of a deed, in its legal sense, includes an acceptance by the grantee for the purpose and with intention on his part of taking and holding title to the property conveyed. The general rule is stated in 16 Am. Jur., Sec. 153, p. 523, as follows:—

"In order to complete the delivery of a deed, whether such delivery is actual or constructive, and to make the instrument operate as a conveyance of title, *an acceptance on the part of the grantee is essential. In other words, if the grantee in a deed refuses to accept it, the instrument is not in contemplation of law delivered, although the grantor has done all on his part that is required to consummate delivery, and title does not pass by virtue thereof.* Even a deed purely by way of gift

and which imposes no obligations on the grantee ·other than those necessarily incident to ownership of the land requires acceptance to be operative, for an estate cannot be thrust upon a person against his will." (Italics ours.)

26 C. J. S., Deeds Sec. 51, p. 253 says: "It is essential to the validity of a deed that it be accepted by the grantee, even though it is recorded, . . ." And again in the same section but on page 255, the same work adds: "If, however, the acts of the grantee clearly manifest an intention not to accept, they will have that effect."

Landres Wilbourn refused to accept the deed not only when his father told him he was going to make him a deed to the place, but also many times after that.

In Keller v. Federal Farm Mortgage Corp., 293 Ky. 412, 169 S. W. (2d) 31, 32, Florence Keller and her husband executed a deed to his brother, Phillip Keller, for a consideration of $800, payable one-half in thirty days and the other in six months, recorded the deed, and then mailed it to the grantee, with notes for him to sign. Phillip failed to sign the notes and send them back. Florence Keller then sold to Silas Harris, whose title later passed to the mortgage corporation. It was contended that the recording of the deed was a legal delivery, but the Court said:

"The record itself manifests, without contradiction, that the deed to the plaintiff's husband and father was never delivered, for delivery of a deed in its legal and complete sense includes an acceptance by the grantee for the purpose and with the intention on his part of taking and holding title to the property described. Hacker v. Deaton, 200 Ky. 383, 254 S. W. 1055; Sullivan v. Bland, 215 Ky. 57, 284 S. W. 410. The presumption of delivery that arises from the recording of this deed was overcome by the evidence that it was not legally delivered and by the fact that no claim was made to the property by the grantee during his ten years of life

or by his widow and heirs for nearly thirty years thereafter."

In Brown v. Sweet, 95 Cal. App. 117, 272 p. 614, 620, the Court said:

"Again, the mere recordation of the deed by the defendant and respondent was not a delivery. In a case in the Supreme Court of the United States (Parmelee v. Simpson, 5 Wall. [U.S.], 81, 86, 18 L. Ed. 542), where it was held that the placing of a deed on record, the grantee being ignorant of its execution and not having authorized or given his assent to the record, did not operate as a delivery so as to give the grantee precedence over a mortgage executed between registration and a formal subsquent delivery, Mr. Justice Davis said: 'The placing of the deed on record was Bovey's own act, and done without the assent of Simpson. Under this state of facts there was manifestly no delivery. The execution and registration of a deed, and delivery of it to the register for that purpose, does not vest the title in the grantee.' Delvin, Deeds, vol. 1, Sec. 291, p. 497. Nor does the recording of a deed to such person constitute delivery without acceptance."

In Rasmussen v. Stanfield, 49 S. D. 120, 206 N. W. 475, 476, where there had been no acceptance of the deed by the grantee, though grantor had performed his part to deliver it, the Court said:—

"It is well established that delivery and acceptance are essential elements of conveyance of title by deed."

Other cases holding that if the grantee in a deed refuses to accept it, the instrument is not in contemplation of law delivered and title does not pass by virtue thereof, are: Hawkes v. Pike, 105 Mass. 560, 7 Am. Rep. 554; Mayfield v. Dwelling House Mut. Ins. Co., 121 Neb. 217, 236 N. W. 689; Armstrong v. Morrill, 14 Wall., U. S., 120, 20 L. Ed. 765; Ames v. Ames, 80 Ark. 8, 96 S. W. 144, 117 Am. St. Rep. 68; Hibberd v. Smith, 67 Cal. 547, 4 P. 473, 8 P. 46, 56 Am. Rep. 726; Brady v. Huber, 197 Ill. 291, 64 N. E. 264, 90 Am. St. Rep. 161; Seibert v. Seibert,

379 Ill. 470, 41 N. E. (2d) 544, 141 A. L. R. 299; Kingsbury v. Burnside, 58 Ill. 310, 11 Am. Rep. 67; Doe ex dem. Herbert v. Herbert, 1 Ill. 354, 12 Am. Dec. 192; Woodbury v. Fisher, 20 Ind. 387, 83 Am. Dec. 325; Sheehy v. Scott, 128 Iowa 551, 104 N. W. 1139, 4 L. R. A., N. S., 365; Renehan v. McAvoy, 116 Md. 356, 81 A. 586, 38 L. R. A., N. S., 941; Defreese v. Lake, 109 Mich. 415, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584; Chambers v. Chambers, 227 Mo. 262, 127 S. W. 86, 137 Am. St. Rep. 567; Spencer v. Carr, 45 N. Y. 406, 6 Am. Rep. 112; Jackson ex dem. McCrea v. Dunlap, 1 Johns. Cas., N. Y., 114, 1 Am. Dec. 100; Arnegaard v. Arnegaard, 7 N. D. 475, 75 N. W. 797, 41 L. R. A. 258; Aggers v. Blackburn, Tex. Civ. App., 230 S. W. 424; Peck v. Rees, 7 Utah 467, 27 P. 581, 13 L. R. A. 714; Pitkin v. Montpelier, 85 Vt. 467, 82 A. 671, Ann. Cas. 1914D, 500; Spring Garden Bank v. Hulings Lumber Co., 32 W. Va. 357, 9 S. E. 243, 3 L. R. A. 583. See also annotations: 12 L. R. A. 177; 13 L. R. A. 676; 54 L. R. A. 898; Ann. Cas. 1912A, 230.

Tiffany on Real Property, Vol. 2, p. 1788, Sec. 463, says: "In many of the states, perhaps a majority, an acceptance of the conveyance by the grantee named therein has been stated to be essential to its validity." Citing cases under note 5 thereto.

In the case before us there has been no valid delivery of the deed by the grantors in that, (1) no delivery at all is shown by the proof to have geen made by Mrs. Wilbourn; (2) no delivery has been made by R. H. Wilbourn because he and his wife retained the deed in their possession without delivery and there has been shown no intent on his part to pass title immediately to Landres Wilbourn, except for the presumption arising from the recordation of the deed, and this presumption yields to the facts showing a retention of the deed without delivery to grantee and no change in possession of the lands or the benefits therefrom or the burdens thereon, but Wilbourn and wife continued to reside on the land, to enjoy all the

benefits of the land to the exclusion of the whole world, and to pay the taxes thereon; and (3) there has been no valid delivery of the deed because the grantee therein refused to accept it and permit the title to pass to him by the deed; and (4) the deed was destroyed by Mrs. Wilbourn before there had been any valid delivery of it by her and husband to the grantee and before the grantee had accepted the deed and permitted the title to pass into him.

In my judgment there was neither a legal delivery of the deed by the grantors (Hall v. Barnett, 71 Miss. 37, 14 So. 732; Lynch v. Lynch, 121 Miss. 752, 83 So. 807) nor was the deed accepted by the grantee (Morgan v. Hazlehurst Lodge, 53 Miss. 665; Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369); and for both these reasons the deed was not in contemplation of law delivered and title did not pass by virtue thereof.

The majority opinion says: ''Appellee's burden to show an intention not to effect delivery is not supported by the preponderance of the evidence. If it be conceded that the son protested against the conveyance, the persistence of appellee in his intention merely emphasized a determined purpose by the grantors. Such purpose was effectuated by delivery of the deed, after proper execution to the chancery clerk for recording. See Ladner v. Moran, 190 Miss. 826, 1 So. (2d) 781, citing Young v. Elgin, Miss. 27 So. 595; also Palmer v. Riggs, 197 Miss. 256, 19 So. ('2d) 807, and Frederic v. Merchants & Marine Bank, 200 Miss. 755, 28 So. (2d) 843.''

First let us examine these cited authorities. In Ladner v. Moran, supra, a grantor signed and acknowledged a deed to the homestead owned by her, conveying it to the grantee, and the grantor deposited the deed with a bank under a memorandum reciting that the deed should be delivered only to her, unless she died before calling for it and then the deed to be delivered to the grantee named in it. The husband, who had only a homestead interest, died before delivery to grantee. Before being

taken to the hospital before her death, grantor delivered a memorandum to the grantee with instructions that he should take it to the bank and get the deed. This he did and the court held that delivery of the memorandum was a delivery of the deed, and that it was not void on the ground that it was not signed by the husband since the deed was not fully executed until delivery, and husband was then dead. Here the "memorandum" to the bank was accepted by the positive act of the grantee and there was, of course, a valid delivery of the deed by the grantor and a valid acceptance by the grantee.

The next case cited in the majority opinion is Young v. Elgin, supra [27 So. 596]. There a mother executed a deed conveying her residence to her daughter and placed the deed on the grantor's wardrobe. The daughter knew nothing of the execution of this deed until the mother, when leaving to visit another daughter, told her where the deed was and that she had given her the property. The mother died, the deed still being on the wardrobe. The evidence touching upon the delivery was that the grantor told the grantee, her daughter, " 'Houston, I have given you my home, and the deed to it is on top of the wardrobe, on this end, wrapped in a newspaper.' I said, 'Don't talk that way, Mamma;' and she said, 'If anything happens, I want you to know where the deed is.' " This shows, on the part of the grantee, a willingness to accept the deed and to let the title thereby vest in her.

The next case cited in the majority opinion is Palmer v. Riggs, supra. This case has no application here, for there the instruments were held to be testamentary in character, ineffective as deeds, and the question of what constitutes a delivery was not involved.

In Frederic v. Merchants & Marine Bank, supra, Mrs. W. E. Frederic bought a beach lot and her husband a lot on Market street, Pascagoula, Mississippi, from appellee, paying the bank cash for both lots. There was an oral agreement as to the use to which Mrs. Frederic's

lot should be put. Both deeds were placed in the vault of the bank where they remained until construction of a yacht club and bathing pavilion was started on Mrs. Frederic's lot, whereupon the bank notified her that title to this lot still remained in the bank and to cease further construction, on the ground that she had breached the contract of purchase as to the use to which the lot would be put. On executing the deed the bank had removed the lot from its realty assessment and shifted to grantee the burden of taxes and the lot was removed from the realty assets carried on the books of the bank. When asked by the surveyor, employed by Mrs. Frederic to survey the lot, the president of the bank gave him the book and page of the record in the clerk's office, where the deed was recorded, and told the surveyor he didn't know whether Mrs. Frederic had gotten the deed and put it on record or not, and he testified that he would have been willing to let Mrs. Frederic take the deed out of the bank if he were satisfied she was carrying out the agreement as to the use of the lot. He also stated [200 Miss. 755, 28 So. (2d) 846], when asked about Mr. Frederic's deed to the lot on Market street, "Yes, that is right. I wanted Mr. Frederic to take the deeds." The court held there was a delivery of the deed and such a conclusion was inescapable. Frederic had paid the consideration, was paying taxes on the land, and was by his conduct in erecting improvements on the lot evidencing the acceptance of the deed and the vesting of the title in her (paying taxes and building a yacht club and bathing pavilion on the lot). In the case before us there was no conduct on the part of grantee evidencing acceptance until after the deed had been revoked, destroyed, and acceptance made impossible.

These cases deal solely with the grantor's part of a legal delivery of a deed. There was not involved in them, and they do not consider, the part the grantee must play in the delivery. For emphasis, I repeat that in this

state a deed is a contract and, as in other contracts, there must be a meeting of the minds. There must be a grantor, a grantee, and a thing granted. Morgan v. Hazlehurst Lodge, 53 Miss. 665. There must be a delivery of the deed by the grantor with intent to vest title to the thing granted in the grantee, immediately. There must be an acceptance of the deed by the grantee from the grantor with intent to immediately receive title to the thing granted. All of the cases cited by the majority opinion deal only with the grantor's half of the fact of delivery. The grantee's half of the delivery (acceptance) was neither questioned nor considered because it was not involved in any of the cases.

Consequently, with due deference to the superior learning of my fellows, it is my humble judgment that there was no valid delivery of the deed here involved, because (1) R. H. Wilbourn, by his acts, manifested an intention to have the deed ready to deliver, if he should later decide to deliver it, but kept it in his and his wife's possession and under their control and never delivered it, as was the case in Lynch v. Lynch, supra, and Hall v. Barnett, supra. (2) That Mrs. Wilbourn never delivered the deed to anyone or authorized anyone to record it, and there is not a scintilla of evidence in the record to show any delivery by her. (3) Mrs. Wilbourn destroyed the deed before Landres knew of its signing, acknowledgment, and recording. (4) The grantee refused to accept the deed, and it was ineffective as a delivery under the numerous cases cited in this opinion.

The chancellor held that Landres Wilbourn refused to accept the deed and thereby permit the title to immediately vest in him. The overwhelming weight of the evidence supports this finding. To reverse, we must hold that the Chancellor was manifestly wrong in his finding. I cannot so find, in the face of this record, showing the Chancellor to have been manifestly right in his

finding. In my humble judgment, the judgment of the lower court should be affirmed.

**Roberds, J.,** concurs in this dissent.

ON SUGGESTION OF ERROR.

37 So. (2d) 775.

Appellees filed a suggestion of error the gist of which is stated in the opinion of the Court in response thereto as follows:

**Alexander, J.**

In our opinion herein we held that there was not only a delivery of the deed, but also an intention to effect same. It is assigned for error that our holding does violence to Lynch v. Lynch, 121 Miss. 752, 83 So. 807, and Barner v. Lehr, 190 Miss. 77, 199 So. 273, 277. We distinguish the former case as resting solely upon the presumption arising from recordation. The latter case is cited to support the contention that "Where the delivery of a deed is placed in issue, the burden of proof rests upon the party asserting delivery." It is argued that we were in error in stating herein that "appellee's burden to show an intention not to effect delivery is not supported by the preponderance of the evidence."

Here, the complainant, appellee, alleged non-delivery, and this was therefore part of his affirmative burden. In Barner v. Lehr, supra, delivery was alleged in the defendant's cross-bill. ▮▮ Where non-delivery alleged, the burden of non-delivery is on the one claiming non-delivery. 26 C. J. S., Deeds, Sec. 183.

Overruled.